**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

INTERSTATE FIRE &
CASUALTY COMPANY,

      Plaintiff/Counter Defendant,

vs.                                                                                                                 No. CIV 08-956 JEC/LFG

UNITED NATIONAL
INSURANCE COMPANY,

      Defendant/Counter Claimant.

**MEMORANDUM OPINION AND ORDER**

      THIS MATTER comes before the Court on *United's Notice of Motion for Summary Judgment and Memorandum*, filed July 21, 2008 (Doc. 63) and *Interstate Fire and Casualty Company's Motion for Summary Judgment and Memorandum of Law in Support*, filed July 21, 2008 (Docs. 27, 28) .  The primary issue for resolution on these cross-motions is which (if either) of two successive claims-made professional liability policies covers losses incurred in a medical malpractice case settled against a common insured.  The answer hinges on whether a "claim" was first made under the policy period of the policy Interstate Fire and Casualty Company issued to Cirrus Medical Staffing, Inc. ("Cirrus") or if, instead, the claim was first made during the coverage period of the policy issued to Cirrus by United National Insurance Company.  For the reasons discussed herein, I find the claim was first made during the Interstate policy period.

**I.**      **Procedural Background**

This case was originally filed in the Superior Court of the State of California, County of Marin, by Fireman's Fund Insurance Company ("Fireman's Fund") and was removed to the United States District Court for the Northern District of California on the basis of diversity jurisdiction under 28 U.S.C. §§ 1332(a), 1441.  Subsequently, Fireman's Fund (a California resident) was dismissed from the lawsuit.  Prompted by the dismissal of Fireman's Fund, Judge Patel from the Northern District of California transferred the case to this Court *sua sponte* pursuant to 28 U.S.C. § 1404(a).  *See Memorandum and Order Re:  Transfer to the District of New Mexico*, filed August 22, 2008 (Doc. 73)("Transfer Order").  In her Transfer Order, Judge Patel expressed concern that California law may not apply because there remained no tie to California.  Upon transfer to this District, I ordered additional briefing on the question of the proper substantive law to be applied, which was completed on May 7, 2009.  The cross motions for summary judgment, including the question of applicable substantive law, are now before the Court for ruling.

**II.    Factual Background**

The Interstate policy applies to claims made during its policy period of January 27, 2005 through January 27, 2006.  *See* Ex. A to Joint Statement of Undisputed Facts ("JSUF").  The United policy applies to claims made during its policy period of January 27, 2006 through January 27, 2007.  *See* Ex. B to JSUF.  Cirrus contracted with Hospital Services Corporation to provide medical staffing for Lovelace Sandia Health System in Albuquerque, New Mexico ("Lovelace Sandia").  *See* Ex. C to JSUF.  On or about August 16, 2004, Cathy Robinson entered into a "Traveling Medical Professional Services Agreement" with Cirrus providing that Robinson would be employed by Cirrus as a traveling Registered Nurse.  *See* Ex. D to JSUF.

Cirrus assigned Robinson to work as a Registered Nurse for Lovelace Sandia's Albuquerque, New Mexico hospital.

On or about October 7, 2004, Lovelace Sandia patient Marilyn Tracy died. On September 14, 2005, Tracy's estate filed a medical malpractice lawsuit styled *Ben Tracy, as Personal Representative of the Estate of Marilyn Tracy, Deceased v. Lovelace Sandia Health d/b/a Albuquerque Regional Medical Center* (*"the Tracy Action"*). On January 4, 2006, Ellen Thorne Skrak, defense counsel for Lovelace Sandia in the *Tracy* action, wrote to Greg Allen of Cirrus stating, in relevant part,

> "[y]our nurse, Cathy Robinson, was one of the nurses who cared for Ms. Tracy prior to her death. I believe it is possible that opposing counsel . . . will be contacting you about how to accomplish service of process. She has expressed the intention to bring you into the case. Even if she decided not to do so, she will likely try to subpoena Ms. Robinson to give a deposition . . . I hope it is helpful to have prior notice of the possible suit or deposition . . . ."

*See* Ex. F to JSUF. On January 5, 2006, Skrak sent Cirrus a facsimile copy of the original Complaint in the *Tracy* Action ("Complaint"). *See* Ex. E to JSUF. The Complaint references a "C. Robinson" and alleges, *inter alia*, that "Defendant ARMC, acting through its employees, agents and/or apparent agents or contractors of ARMC, including but not limited to, Nurse C. Robinson . . . negligently failed to inform the physician on call of Marilyn Tracy's status." *Id.* at 4, ¶ 21.

Also on January 5, 2006, upon receiving a copy of attorney Skrak's letter to Greg Allen of Cirrus, Robert Watson of Watson Insurance Agency, Inc., prepared a "General Liability Notice of Occurrence/Claim," documenting an "occurrence" and attaching the Skrak letter. *See* Ex. H to JSUF. The same day, Terry Belotte of Health Care Insurers (""HCI"") sent a copy of Watson's Notice of Occurrence and Skrak's January 4, 2006 letter to Interstate via e-mail. *See*

3

Ex. I to JSUF.  On January 10, 2006, Skrak sent Interstate a copy of the original complaint in the *Tracy* Action via facsimile and it was received on that day.  *See* Ex. J to JSUF.

It appears Cirrus was seeking insurance coverage from United during this time frame. On January 18, 2006, Cheryl Kleinke of United received an e-mail from Bill Hanaway of HCI,

stating,  [w]e have current loss runs on file that presently show no reported claims.  However, Cirrus has just been notified as of 1/6/06 by counsel of a hospital to warn that they may be contacted by a plaintiff's attorney, presently suing the hospital, because one of the nurses providing treatment was an employee of Cirrus being staffed to the hospital.  The hospital's attorney advised that even if the plaintiff doesn't intend on going after Cirrus, they may at least want to subpoena and depose the nurse.  We have a copy of this letter and the complaint for wrongful death if you want to review.

Ex. K to JSUF.

On March 21, 2006, Plaintiff filed his First Amended Complaint for Wrongful Death ("Amended Complaint") in the *Tracy* Action, adding Cirrus and Health Resources Network, Inc. as Defendants.  Ex. L to JSUF.  Cirrus was served on March 28, 2006.  On April 11, 2006, Interstate and United each received a copy of the Amended Complaint.  On March 29, 2006, Cirrus received a letter from United's Claims Department acknowledging its receipt of the *Tracy* Action and identifying Diane Cruz as the United claims examiner assigned to the case.  *See* Ex. M to JSUF.

Cruz advised Cirrus United would provide coverage only "pursuant to a strict reservation of rights."  *See* Ex. S to JSUF.  On October 10, 24 and 25, 2006, Cruz and Jennifer Green, claims analyst for Intersate, exchanged a series of e-mails, wherein Green communicated Interstate's position that given four million dollars in total limits between the two policies – Interstate one million and United three million – Interstate had a 25% contribution.

On February 13, 2007, Cruz sent Allen a Disclaimer of Coverage regarding the *Tracy* Action.  Therein, United invoked its reserved right to reevaluate coverage for the claim, finding no coverage under the United policy pursuant to its Insuring Agreement, which states in relevant part that the "insurance applies to injury only if a 'claim' for damages to which no other insurance applies, because of the injury is first made against the insured and reported to us during the 'policy period'."  Ex. U to JSUF.

On March 19, 2007, Cirrus wrote to Interstate instructing that the claim be settled at a scheduled mediation on March 21, 2007 for an amount not to exceed the $1,000,000 Interstate policy limit.  *See* Ex. V to JSUF.  On March 19, 2007, Interstate responded to United's February 13, 2007 Disclaimer of Coverage, demanding United's continued participation in the defense of Cirrus, including the pending mediation.  *See* Ex. W to JSUF.  On March 20, 2007, Cirrus wrote to Cruz stating its expectation that United participate in the resolution of the claim.  *See* Ex. X to JSUF.

On March 21, 2007, Green e-mailed Cruz following a phone conversation in which Cruz had asserted that the most United would be required to contribute was $100,000.  *See* Ex. Y to JSUF.  In that e-mail, Green disagreed with Cruz' cap and set out, instead, a *pro rata* apportionment of defense and indemnity with a 1:3 ratio.  Green then calculated three (3) United dollars for every one (1) Interstate dollar "or a 75%/25% split."  *Id.*  On March 30, 2007, Cruz responded in writing to Allen's March 20 letter, agreeing on behalf of United to participate in settlement without waiving any rights and reiterating its position that under the terms of the United policy, there was no coverage for the claim.  *See* Ex. BB to JSUF.

On May 23, 2007, the *Tracy* Action settled.  Cirrus agreed to pay $499,000 to Plaintiff.

Of that amount, Interstate paid $399,000 on Cirrus' behalf and United paid $100,000.  *See* Ex. AA to JSUF.

In the cross-motions for summary judgment, Interstate seeks a declaratory judgment that United's policy covered the Tracy action and a money judgment in its favor for its contribution.  United seeks a declaratory judgment that its policy did not cover Cirrus's alleged liability in the Tracy action but Interstate's policy did, entitling United to recoup its settlement contribution from Interstate.

### III.     Legal Standard

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FED.R.CIV.P. 56(c).  A "genuine" issue of fact exists where the evidence is such that a reasonable jury could resolve the issue either way.  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

In response to a motion for summary judgment, a party "may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial."  FED.R.CIV.P. 56(e)(2).  The party opposing summary judgment must present specific, admissible facts from which a rational trier of fact could find in his favor.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  However, the Court must consider the record, and all reasonable inferences therefrom, in the light most favorable to the party opposing the motion.  *Adler* at 670 (citing *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505, 91 L.Ed.2d 265).

## IV. Discussion

### A. Choice of Law

Choice of law is determined by the conflict of laws rules of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97, 85 L. Ed. 1477, 61 S. Ct. 1020 (1941). Pursuant to 28 U.S.C. § 1404(a), a transferee court must generally apply the state law that would have been applied had there been no transfer. *See Ferens v. John Deere Co.*, 494 U.S. 516, 523, 110 S. Ct. 1274, 108 L. Ed. 2d 443 (1990) (stating that "the law applicable to a diversity case does not change upon a transfer initiated by a defendant)(citing *Van Dusen v. Barrack*, 376 U.S. 612, 635-37, 84 S. Ct. 805, 11 L. Ed. 2d 945 (1964)). "The rule is settled that when a district court grants a venue change pursuant to 28 U.S.C. § 1404, the transferee court is obligated to apply the law of the state in which the transferor sits." *Yoder v. Honeywell Inc.*, 104 F.3d 1215, 1219 (10th Cir. 1997). This rule applies whether the defendant, the plaintiff, or the court initiates the change of venue. *Id.* In this case, then, California's choice of law applies to determine the substantive law to be applied.

Applying the government-interest approach, California law is generally preferred and to be applied unless application of another state's law would "significantly advance the interests of [a] foreign state...." *Strassberg v. New England Mut. Life Ins. Co.*, 575 F.2d 1263, 1264 (9th Cir. 1978). The underlying wrongful-death action giving rise to this suit was brought in New Mexico against, among others, Cirrus, which is located in North Carolina. United is a Pennsylvania corporation and Interstate is an Illinois Corporation whose parent (Fireman's Fund) is a California Corporation.

Notwithstanding the transfer to this District, New Mexico has no compelling interest in

the outcome of this matter, as the underlying wrongful death suit has been fully settled and terminated.  Moreover, even if New Mexico law were to apply under Cal.Civ.Code § 1646 (as the place where the contract was intended to be performed), New Mexico law does not conflict with California law on the issues to be determined in this lawsuit.  Further, though North Carolina could have some interest in how any reallocation of underlying payments might affect North Carolina-based Cirrus, no conflict would arise because North Carolina law also does not conflict with California law.  Accordingly, California substantive law will apply. [1]

### B. Claims-Made Policies

Claims-made policies like those at issue here are intended to limit coverage to claims that are made against the insured and reported to the company during the policy period.  Because negligence and injury giving rise to malpractice claims are frequently not discovered until long after the negligent act or omission occurs, professional liability carriers have shifted to claims-made policies where underwriters can underwrite risk , compute premiums and establish reserves with greater certainty than with "occurrence" policies, thus making professional liability coverage more available and affordable.  *See Montrose Chemical Corp. of California v. Admiral Ins. Co.*, 10 Cal.4th 645, 688 (Cal. 1995); *Helfand v. Nat'l Union Fire Ins. Co.*, 10 Cal.App.4th 869, 888 (Cal. App. 1992).  Timely reporting of the claim is key, as notice of a claim is the event triggering coverage.  *See Pension Trust Fund etc. v. Federal Ins. Co.*, 307 F.3d 944, 956-957 (9th Cir. 2002).

---

[1] A place of performance test might also apply to this contract dispute under Cal. Civ. Code § 1646, which leads to the same result because New Mexico law does not appear to conflict with California law.  *See R & R Sails, Inc. v. Insurance Co. of N. Am.*, 2008 U.S.Dist.LEXIS 30022 (S.D. Cal. 2008).

Indeed, the question of whether the Interstate policy or the United policy covered Cirrus in the *Tracy* Action hinges on what communication triggered coverage. United contends that the underlying wrongful death-related claim was first made and reported when Cirrus learned of the lawsuit identifying Cirrus' employee as a negligent actor and was informed by the plaintiff's lawyer of plaintiff having expressed intent to add Cirrus as a defendant , January 4-5, 2006. Interstate contends that the communications made prior to the expiration of its policy did not constitute a claim for purposes of triggering coverage and a claim was first made when the wrongful death complaint was amended to add Cirrus as a defendant, which happened during the United policy period.

**C.  Does The Interstate Policy Apply?**

The Interstate policy states in relevant part, as follows:

I.     COVERAGE

  The Company will pay on behalf of the **Insured** all sums which the **Insured** shall become legally obligated to pay as **Damages** for **Claims** first made against the **Insured** and reported to the Company during the **Policy Period**, as a result of Bodily Injury, Property Damage or Personal Injury caused by an Incident. . .
  .
  .
  .

Ex. A to JSUF, Form 01-PL-4002 (03/04), p. 1 [IFC00161].  The policy further states:

VI.    WHEN A **CLAIM** IS TO BE CONSIDERED FIRST MADE

  A **Claim** shall be considered as being first made when the Company first receives written notice from the **Insured** advising that a **Claim** has been made and providing the details of the **Claim**.
  .
  .
  .

Ex. A to JSUF, Form 01-PL-4002 (03/04), p. 2 [IFC00162].
  .

9

.
.

    IX.    DEFINITIONS

.
.
.

> **"Claim"** means a demand for money or the filing of **Suit** naming the **Insured** and, in either case, alleging a **Bodily Injury, Property Damage or personal Injury** as a result of an **Incident**;

.
.
.

Ex. A to JSUF, Form 01-PL-4002 (03/04), p. 5 [IFC00165].

In light of this policy language, the written communications that could comprise a "claim" triggering coverage during the Interstate policy period here consist of (1) the January 5, 2005 letter from Skrak to Cirrus; (2) the copy of original Complaint in the *Tracy* Action sent by Skrak and received by Cirrus on January 6, 2005; and (3) The Notice of Claim from the Watson Insurance Agency.

It is undisputed that during the Interstate policy period, both Cirrus and Interstate received notice of the *Tracy* Action with its original Complaint *naming only Lovelace Sandia as Defendant*. Although Cirrus was not named as a defendant in the original Complaint, within the body of that Complaint Cirrus employee nurse "C. Robinson" was identified by *name* and was alleged to have negligently caused or contributed to the death of Marilyn Tracy while in the course and scope of her employment. The question, then, is whether the original Complaint was "the filing of a suit *naming* the Insured" to meet Interstate's definition of a "claim" and trigger coverage. IFC00165.

The Interstate policy does not define the term "naming." United argues that "words of a

contract are to be understood in their ordinary and popular sense, rather than according to their strict legal meaning. . . ." Cal.Civ.Code § 1644.  In its ordinary sense, or everyday usage, the verb "to name" means to "[a]ssign a specified, proper name to" or "to refer to by name...." *See* www.websters-online-dictionary.org.   United urges the Court to begin and end by assigning the term "naming" its ordinary usage and dictionary definition to conclude that Nurse Robinson was indeed "named" in the original *Tracy* Complaint.

United's approach, however, disregards the Court's duty to "interpret the [contractual] language in context, with regard to its intended function in the policy."  *Bank of the West v. Superior Court*, 2 Cal.4th 1254, 1265 (Cal. 1992) (rejecting insured's reliance on dictionary definitions of "unfair competition" because, while correct in the abstract, such approach disregarded the meaning of the terms within the context of the policy.).

Interstate argues that read in proper context, its use of the term "naming" refers only to the process by which a defendant is designated as a party to a complaint, which did not happen here until the Amended Complaint was filed on March 21, 2006 – during the United policy period.  Indeed, the term "naming" as used in the contract clause follows and appears to modify the term "suit," which lends support to Interstate's conclusion that the original Complaint did not "name" its insured, Cirrus.  Interstate also notes that the original Complaint did not in any event "name" Cirrus, mention Cirrus, or state that "C. Robinson" was anything other than a Lovelace Sandia employee.  Interstate contends that "to be 'named' in a law suit requires that the Insured by [sic] actually mentioned–by name–in the lawsuit." Interstate Fire and Casualty Company's Opposition to United National's Motion for Summary Judgment (Doc. 67) at 7.  Yet the fact is that Nurse "C. Robinson" was not only mentioned in the original complaint, but she was

specifically identified as a negligent actor causing damages to the plaintiff.

Insurance policy interpretation is a question of California law, which requires courts to first look to the insurance policy language in order to ascertain its plain meaning. Cal. Civ. Code § 1636; *Waller v. Truck Ins. Exch., Inc*., 11 Cal. 4th 1, 44 Cal. Rptr. 2d 370, 900 P.2d 619, 627 (Cal. 1995). Because insurance policy interpretation must give effect to the parties' "mutual intention" at the time they formed the contract, Cal. Civ. Code § 1636, the parties' intent should be inferred solely from the written provisions of the contract. Cal. Civ. Code § 1639. The written provisions should be examined "together, so as to give effect to every part, if reasonably practicable." Cal. Civ. Code § 1641. If a written policy provision is "clear and explicit," it must be given proper effect. *See, e.g., Fireman's Fund Ins. Co. v. Superior Court*, 65 Cal. App. 4th 1205, 78 Cal. Rptr. 2d 418, 422 (Cal. Ct. App. 1997).

That said, if a policy provision is capable of two or more reasonable constructions, it is "ambiguous," *Waller*, 900 P.2d at 627 (citing *Bay Cities Paving Grading, Inc. v. Lawyers' Mutual Ins. Co.*, 5 Cal. 4th 854, 21 Cal. Rptr. 2d 691, 855 P.2d 1263, 1271 (Cal. 1993)), and should be resolved "in favor of the insured, consistent with the insured's reasonable expectations," *E.M.M.I. Inc. v. Zurich American Ins. Co.*, 32 Cal. 4th 465, 9 Cal. Rptr. 3d 701, 84 P.3d 385, 391 (Cal. 2004) (citation omitted). However, "[c]ourts will not strain to create an ambiguity where none exists." *Waller*, 900 P.2d at 627 (citing *Reserve Ins. Co. v. Pisciotta*, 30 Cal. 3d 800, 180 Cal. Rptr. 628, 640 P.2d 764, 768 (Cal. 1982)).

Here, there is ambiguity as to the meaning of the term "naming" as used in the Interstate insurance contract. Coverage should, therefore, exist given the duty to resolve ambiguities in favor of coverage.

### i.  Attorney Skrak's January 4, 2006 Letter to Cirrus and the Original Complaint

Skrak's letter states in principal part, "[y]our nurse, Cathy Robinson, is one of the nurses who cared for Ms. Tracy prior to her death.  I believe it is possible that opposing counsel ... will be contacting you about how to accomplish service of process.  She has expressed the intention to bring you into the case.  Even if she decided not to do so, she will likely try to subpoena Ms. Robinson to give a deposition . . . I hope it is helpful to have prior notice of the possible suit or deposition . . . ."  Ex. F to JSUF.

Interstate relies heavily on *KPFF, Inc. v. California Union Ins. Co.*, 56 Cal. App. 4th 963 (Cal. App. 1997), asserting that *KPFF* is directly on point and dictates a conclusion that no claim was first made during Interstate's policy period.   The Court disagrees.

It is true that in *KPFF*, a letter from an attorney, combined with pleadings in an earlier lawsuit, did not suffice as written notice of claim under an awareness provision in a claims-made professional liability policy.  *Id.*  There, plaintiffs, an insured and an insurer who paid a claim, appealed a trial court's order dismissing their complaint against a prior insurer that had denied coverage under the policy.  Defendant had disclaimed liability because plaintiff insured never gave written notice of the claim involving a seismic defects claim during the policy period, which was required by an awareness clause in the policy.  The only claim that had been reported during the policy period was not based on structural design deficiencies of a building, but on expenses the general contractor had incurred in repairing certain cable failures.  Accordingly, the nature of the post-policy period claims of seismic defect were so different from the claims made during the policy period involving the cable failures that no duty to investigate possible structural defects had been triggered under the awareness provision in the policy.

The Court finds that *KPFF* is readily distinguishable from the case at hand on its facts. As discussed below, the Interstate policy here does not even *have* an awareness provision and the *KPFF* case certainly does not stand for the proposition that ambiguous policy language should be narrowly construed against coverage, which is what Interstate is, in effect, asking this Court to do.

### ii.   Awareness Provisions and Prior Knowledge Exclusions

Although my ruling here is grounded in the determination that "naming," as used in Interstate's definition of "claim," is ambiguous and must be construed in favor of coverage, I note that Interstate's proposed contract interpretation leads to a further problem. Interstate seeks a reading of its policy language that narrowly limits what constitutes reporting of a "claim," and it does not contain an "awareness" provision.

An awareness provision or clause is a coverage clause which extends the limits of insurance in a claims-made policy by calling for an insured to report anything that "may give rise to a 'claim'" and not merely actual lawsuits naming the insured. *Gyler v. Mission Ins. Co.*, 10 Cal.3d 216, 220, 110 Cal.Rptr. 139 (1973). Another standard clause typically found in claims-made policies is a "prior knowledge" exclusion which operates to deny coverage for claims, wrongful acts, or suits – *or circumstances that might give rise to such claims or suits* – of which an insured had prior knowledge or could reasonably have foreseen.

Under its narrow interpretation of the existing contract language, Interstate would at once deny its insured coverage for reporting something short of a lawsuit naming it as a defendant, and expose its insured to the standard exclusion for prior knowledge found in the subsequent United policy or one like it. As United puts it, "Interstate's approach creates a potential gap in

14

coverage because an insured with knowledge of a probable future claim during Interstate's policy period would be unable to [effectively] report it at that time and then, because of that knowledge, be barred from coverage by a standard awareness exclusion in any subsequent policy [such as the United policy here] issued by another insurer." United's Opposition to Interstate's Motion for Summary Judgment at 2. United contends, and the Court agrees, that Interstate's apparent attempt to detract attention from this "potential gap" arising out of Interstate's "odd policy structure" is why Interstate's arguments "require such peculiar mental gyrations at odds with a common-sense approach to claims-made insurance...." *Id.*

### iii.   Does the United Policy Apply?

The United policy applies "only if a 'claim' ... is first made against the insured and reported to us during the 'policy period.'" Ex. B to JSUF, Form CPA-119 (2.2005), p. 1 [IFC00070]. Accordingly, the claim must have been first made after United's policy began on January 27, 2006 in order for coverage to attach. The Court has already determined that the claim was first made in early January, 2005, during the Interstate policy period. Hence, the United policy could not have covered the losses suffered as a result of conduct by Cirrus' employee C. Robinson in the *Tracy* action.

Finally, in the event that the Court had determined that a claim was first made under its policy, United indeed seeks to deny coverage by operation of its standard prior knowledge exclusion. Interstate responds that equitable estoppel would bar denial of coverage for prior knowledge because United itself had knowledge of the circumstances that could give rise to a lawsuit against its insured before it issued the policy. The Court need not consider this issue, as it has determined that the Interstate policy covers the claim. Accordingly, Interstate's objection

to the declaration of Diane Cruz is moot.  *See* Doc. 68.  Further, notwithstanding its stipulation to the Joint Statement of Material Facts, Interstate has objected to the "settlement discussions" it entered into with United being presented to the Court in violation of Fed.R.Evid. 408(a).  *See* Doc. 30. The Court need not reach Interstate's objections on this front, as neither liability nor amount was determined in whole or in part on the basis of those discussions.

V.      Conclusion

The Interstate policy covers the damages incurred by Cirrus in the *Tracy* Action. Having applied the rules of statutory construction under California law, the Court determines that the term "naming" as used in the definition of "claim" under the Interstate policy is ambiguous and, therefore, must be construed in favor of coverage.  Accordingly, the Court finds that the Skrak letter and the original Complaint in the *Tracy* action sufficiently "named" Nurse C. Robinson, Cirrus' employee; that a "claim" was first made and reported to Interstate during the Interstate policy period; and that Interstate is responsible for the losses incurred by Cirrus in the settlement of the *Tracy* Action.

WHEREFORE,

**IT IS ORDERED** that *Interstate Fire and Casualty Company's Motion for Summary Judgment and Memorandum of Law in Support*, filed July 21, 2008 (Doc. 28)  is **DENIED**;

**IT IS FURTHER ORDERED** that *United's Notice of Motion for Summary Judgment and Memorandum*, filed July 21, 2008 (Doc. 63) is **GRANTED;**

**IT IS FURTHER ORDERED** that *Interstate Fire & Casualty Company's Objections to the Declaration of Diane Cruz in Support of United National Insurance Company's Motion for Summary Judgment*, filed August 5, 2008 (Doc. 68) are **DENIED AS MOOT;**

**IT IS FURTHER ORDERED** that *Interstate Fire and Casualty Company's Objection to United National's Use of Privileged Settlement Communications*, filed July 21, 2008 (Doc. 30) is **DENIED AS MOOT**;

**IT IS FINALLY ORDERED** that Judgment is entered in favor of United National Insurance Company and Against Interstate Fire and Casualty Company in the sum of One Hundred Thousand Dollars ($100,000) plus prejudgment interest from June 18, 2005.

Dated July 20, 2009.

s/John Edwards Conway

_____
SENIOR UNITED STATES DISTRICT JUDGE